May it please the court. My name is Michael Garone. I represent the plaintiff appellant in this case, Sohal Masood. With the court's indulgence, I would like to focus the limited time I have to argue today on the dismissal of plaintiff's personal claim for intentional infliction of emotional distress, which is the fourth claim for relief in the amended complaint. Well just for me getting right to the point on that, assuming that, and I know that you'll go back to this, but it was dismissed with prejudice and if assuming that just for arguments purpose right now that the district court was correct that it did require to have a special relationship, I don't see any showing in the record that your client, if we were to agree with that, that your client could ever establish that. Well your honor, I would of course take exception to the fact that a special relationship is required under Oregon law because it is not, but we think that there is sufficient evidence alleged in the amended complaint to set forth a special relationship. The evidence here is that the plaintiff entered into an agreement with his sister in which he would pay for their living expenses in the home in Pakistan and the sister would be responsible for the care, comfort, and nurturing of the mother who is in ill mother. Certainly he wasn't expecting that instead of doing that he would misuse  given to pay for the care of the mother. But in essence, he was paying money and he was expecting her to take that money and use it for the best interests of the elderly and ill mother. Certainly he wasn't expecting that instead of doing that he would misuse given and try to basically bilk Mr. Masood out of the shares in the company that he owned to kind of perpetrate a fraud on Mr. Masood. So we would allege that that really is enough to constitute a special relationship. But I think the court made three basic errors in this case. Number one, placed too much emphasis on the existence of a special relationship because as I stated before, that's just one factor under Oregon law. And there's nothing under Oregon law that says that a stranger could not commit the tort of intentional infliction of emotional distress upon another stranger or that someone who might know another person but not have a special relationship could not commit the tort of intentional infliction of emotional distress. So I think that the whole idea of a special relationship is kind of a red herring. I think in this case what you want to do is really look at the horrific nature of the allegations. And for the purposes of a 12B6 motion, all of the allegations of this complaint and all of the natural inferences to be drawn from those allegations must be drawn in favor of the party opposing the motion. So in this case you have allegations that the defendant, plaintiff's sister, attempted to use their elderly and ill mother to further an attempt by her and another shareholder in the steel company, Mr. Zahur, to gain control of plaintiff's shares in the company. And in furtherance of this scheme, it was in the defendant's interest to keep the mother without medication, to keep her in a state of confusion so she wouldn't really know what was going on, so she would acquiesce in the transfer of these stock shares to Mr. Zahur so that they could control the company. So I can't imagine anything much more outrageous or extreme than that type of conduct. Mr. Garoniff, it seems to me that if the intentional infliction of emotional distress claim was properly dismissed on summary judgment, that should be a dismissal with prejudice. But I wondered about two things. First, I'm not sure there isn't an issue of fact that should permit this to go to a jury on that claim. And I'm wondering under Oregon law, I know there was that case the district court relied on that said a family relationship wasn't enough. But here, is there any case that would suggest that it's an insufficient relationship if you have a brother and a sister, and the brother puts up money to take care of the mother, and the sister runs off with the money and mistreats the mother? Is there any precedent that's closer factually to the claim here? No, Your Honor, there isn't. In the Hutchins case, which is the one that you're referring to that was relied upon by the district court judge, did not even come close to the type of factual allegations that we have in this case. But there is no Oregon case that says that a brother and sister who were involved in this type of mutual effort to care for their mother could not be deemed to have a special relationship. I sort of viewed the Hutchins case as one saying we're not going to say every estate contest can carry an I.I.E.D. claim. Right. But this case is somewhat unique. Let me just ask you to cover the other part of the case for a moment, although you've said you're not stressing that today. On the dismissal under Rule 17 of the claims that the court viewed as claims, the mother's claims, and this is a question really for Pelley as well. I'm not understanding why that dismissal, that part of the case, as opposed to the I.E.E.D., I.I.E.D. part, shouldn't have been without prejudice. Because if what the court was saying was that your client had not shown that he'd been appointed to represent the mother in any way, I'm not understanding why that's a non-merits decision that should be without prejudice. So what I wondered is, is there any possibility that if we required that dismissal to be without prejudice, that your client could still apply in King County or in Pakistan or somewhere and cover that issue that was of concern to the court? Well, Your Honor, I'm not aware of anything that would prevent my client from doing that, from attempting to gain, quote-unquote, representative status within the meaning of whatever legal system he applied for. But except you didn't ever, when it was dismissed with prejudice on that basis, you never said, well, allow us to amend because he can become that. I mean, this had been going on a long time. And to this date, we have no information that he has gained representative status. So something, just the suspicious part of me tells me that he can't get it. Well, Your Honor. You've never made any offer of proof along those lines. And when something is dismissed with prejudice, the first thing a lawyer gets up and does in front of the trial judge is says, Your Honor, if you're going to dismiss it, do it without prejudice. Give us an opportunity because I'm going to make an offer of proof that now that you've made that a requirement, my client can go and do that. Your Honor, we did not make any requests like that to the trial. Was that because you can't? I'm not sure what attempts have been made in that regard. Really, our argument really more focused on the fact that we thought that the conflict of laws analysis informs the decision as to what State law is about capacity. So in this particular You might want to save a minute or two. Your Honor, I would like to, I think, save the rest of my time for rebuttal, if possible. Thank you. Okay. For the appellee, we have Mr. Nelson Berry. Yes, Your Honor. Thank you. Thank you, Mr. Berry. May it please the Court, my name is Nelson Berry, and I represent the Parveen Salimi, the respondent in this matter. Let me begin by saying, and I think the Court has acknowledged this, has Mr. That there is no legal authority in Pakistan, the State of Washington, under Muslim law, under any other form of law, or anywhere else, for the proposition that an heir with but a fractional beneficial interest in the estate has the capacity to unilaterally maintain an action for general damages on behalf of the estate without first being appointed as the personal representative of the estate. Could you address my question, and maybe Judge Callahan's query answers it. But I would have thought that normally, and I think this is true if you look in Wright and Miller or something, that most Rule 17 dismissals are going to be without prejudice. I don't really understand why the Court wouldn't have dismissed that without prejudice, in case he could cure that. Frankly, I think that the Court's position may be well taken. But that's not relief that the appellant ever sought, either in the court below or from this court. And while there's, just as in many things, we aren't able to try the case that we wish we could, we have to try the case that we have. And in point of fact, he's never asked that that dismissal be without prejudice, as I said, either in the court below or from this court. And I'm not sure that this court can unilaterally grant such relief when it's never been requested by anybody. Although I think that the Court's point may be a good one, because it seems to me that this was the defect that the Court found below, I think quite properly. And presumably, it would have been a defect that the appellant, for whatever reason, could have cured. And I don't know why they haven't ever sought that relief, but I think it's a little late in the day to do that and to give them relief that they've never even asked for. Let's go to the claim that. The intentional inflection of a man. Yeah, on the IIED claim. Let me speak to that if I may. Why isn't there enough of a relationship here with a guy who gives money to his sister to buy a house? He's going to put up the bucks, she's going to take care of the mom, and then he alleges she does a whole bunch of horrible things. Well, okay, first of all, again, I think, again, we have to try the case we have rather than the case that we might have had. I mean, for example, as I listened to the appellant today, there may have been a case there for conversion. There could have been a case there for breach of contract, any number of causes of action. Instead, he brought a case for third party inflection of emotional distress. As the court well knows, courts are much more, are not so, I mean, first of all, it's hard enough to bring a case for intentional emotion, I mean, for negligent inflection of emotional distress, where the conduct has to be outrageous and so forth. It's even more difficult if you're trying to do that as a third party. And as the court of appeals, I mean, excuse me, as the court below found, and I think quite properly, just because the fact that these people are brothers and sisters, it doesn't create a special relationship in and of itself, nor does it create any fiduciary obligations. For that matter, even if they were in a contractual relationship. If you're handling somebody else's money, and you accept the money for a purpose, you're telling me you're not accepting it as a fiduciary? I would think that you would be in that instance. But again, I think. That's what happened here. Well, as I said, that might well give rise to a claim for conversion or a breach of contract or something else. But we're talking about a claim for third-party infliction of emotional distress, which I think is a quite different sort of relationship. And I think, moreover, this is a case where, you know, this, again, accepting the allegation. By the way, I just want the Court to appreciate, my client completely denies the allegations, the specious allegations that were made by the appellant in this case. But accepting them as true for the purposes of this complaint, by the appellant's own admission, he did not witness these claims. And as the Court knows, in the State of Washington, if you're going to bring a third-party claim, you have to witness the events. He did not witness those claims. Oregon hasn't reached that issue as to whether or not you have to personally witness them. But even so, according to Massoud, he did not even discover any of these problems until two or three years later. And as I think the judge below quite properly concluded, and I quote, that Mr. Massoud allegedly suffered distress years after the abusive acts took place against a third party, is too diluted an experience to support his own claim for intentional affliction of emotional distress. The matter was going to a jury. Pardon? If the matter, that claim, went to a jury, what would the jury instruction require for I.I.E.D. under Oregon law? I think that a jury instruction would require proof of the following elements that, first of all, that Parveen, and this is under the McGanty case, first, that Parveen Salimi intended to inflict severe emotional distress upon Mr. Massoud. Secondly, that her acts were the cause of his severe emotional distress. And finally, that her acts constituted an extraordinary transgression of the bounds of socially tolerable conduct. Well, I think that the plaintiff was alleging intentional conduct. This is what drive him nuts and get his stock. And, you know, if all that stuff's true, why wouldn't it be outside the bounds of normal conduct? You didn't say in the elements there has to be a special relationship of a certain kind. Well, because the way that the Oregon courts have construed their own statute is that they have concluded that whether there is a, quote, special relationship between the parties is the most important factor in determining whether the conduct at issue is actionable. And, in other words, whether such a relationship imposes upon the defendant a greater obligation to refrain from subjecting the victim to abuse, fright or shock. I was just wondering if that element or that aspect would be incorporated in a jury instruction. I think it would have to if you were going to, because I think all the parties agree that the claim for intentional infliction of emotional distress would be governed by Oregon law. I would point out, too, that, again, in the state of Washington, for a third party to maintain a claim for intentional infliction of emotional distress, they must actually witness the disturbing acts. That didn't occur here, obviously. But Oregon law is still unsettled on whether that is a requirement. They haven't really addressed that issue. But I think, like all courts, they are reluctant, and I think appropriately so, to take any kind of generalized dispute and allow that to somehow be transformed into a tort claim for intentional infliction of emotional abuse. And I think you see that reflected in the Hutchins case where it says, for example, again, talking about an inheritance, about a claim that one of the heirs was manipulating the parent to trying to manipulate the inheritance. And the court says, in essence, a defendant's alleged conduct is a wrongful manipulation of another's inheritance. This is what's alleged here. Needless to say, a dispute among family members surrounding the end of a relative's life. Well, he alleges more, though, like the kidnapping and, you know. He alleges more than just a manipulation. Well, I understand. And as I said, these are completely denied. And I realize the court is going to accept these allegations as true for purposes of this hearing. But even so, I think you still have to find, you know, that there was some sort of special. . . I mean, again, I still think that the court was right, that you have to find a special relationship, one that would impose a fiduciary duty. The court found no fiduciary duty here. And, again, that there was some sort of intent to cause severe emotional stress to the brother. Now, here, according to them, the intent was to take away his assets or to do something like that or whatever. But that's not the same as intending to cause severe emotional distress. That's a different claim. And, again, they're not alleging here that there was conversion or that there was a breach of contract or any of these other causes of action, which I don't think have the same strict requirements that must be satisfied to be maintained. And, again, I, you know, it's unclear to me why he brought these, brought the claims the way he did or didn't go back and cure the defect as far as his ability to represent the estate. Well, if we agree with you that he, on the Rule 17 motion, how does that affect the other complaint, the other. . . The claim about intentional affliction of emotional distress. I think that they're separate claims because I think that the intentional affliction of emotional distress is the one claim that he's trying to maintain on his own behalf as opposed to being on behalf of the estate. So I don't think that the Rule 17 analysis applies to the intentional affliction of emotional distress claim. But even so, I don't think, even as alleged, that he has met the requirements necessary to make out a claim under Oregon law. And, again, I think that the trial court is correct that his claim of distress, years after the abusive acts allegedly took place, is simply too diluted in experience to support his own claim for intentional infliction of emotional distress as a matter of law. Mr. Berry, thank you very much for your kind argument. Thank you. We're at past times. Thank you. We'll let Mr. Garone have his rebuttal. Just briefly, as to the special relationship, we cited the Anderson case. In the Anderson case, which is a 2008 district court case, the district judge interpreted Oregon law to mean that a special relationship was not required. So I don't think it would be appropriate to be in a jury instruction, and it is not one of the elements of the cause of action, as counsel admitted during his discussion. With regards to the issue about the first-party claim or third-party claim, we think that the court erred in viewing this as a third-party claim. The allegations of the complaint are clear that the defendant committed the acts to cause emotional distress to Mr. Massoud. If you look at paragraph 13 of the admitted complaint, it states, among other purposes, Salimi did these acts to cause emotional distress and depression to Mr. Massoud. If you look at paragraph 19, it also states that Salimi's actions, including preventing the mother from communicating with others, denying her medications, et cetera, were for the purpose of causing emotional distress. And the whole issue of third-party versus first-party, I think, is a misnomer here. This is, in essence, a first-party IIED claim, but it happens to be that some of the conduct was against the mother, against a third party. But the intention of the defendant, as alleged, was to cause severe emotional distress to the plaintiff in this case. I would also submit that this issue that the plaintiff has to be in the vicinity is not part of Oregon law. It hasn't been accepted in Oregon law, even if this were a third-party claim, which we would submit that it is not. We think that we've pled a case of intentional infliction of emotional distress. Thank you. Thank you. I think I'll thank Mr. Carone and Mr. Berry for excellent arguments. I'll also congratulate you for not having a boring case.
judges: Beezer, Gould, Callahan